# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.

JOHN KAMMERER,

    *Defendant*.

Case No. 10-10174-01 EFM

## MEMORANDUM AND ORDER

The indictment in this matter charges Defendant John Kammerer with bank fraud, making false statements on a loan application, and money laundering. Before the Court is the Government's Motion to Recuse Defense Counsel (Doc. 18). The Court conducted a hearing on this motion on February 11, 2011, during which the Court heard oral argument from both parties. The Court has considered the parties' filings and the arguments made at the hearing, and is now prepared to rule. As discussed more fully below, the Court denies the Government's motion in so far as it relates to defense counsel's ability to represent the defendant for pretrial matters, but grants it in so far as relates to counsel's ability to represent the defendant at trial.

## I. BACKGROUND

According to the indictment in this case, between March 3, 2003, and January 25, 2010, Defendant John Kammerer took without authorization over a million dollars from his employer, Network Results of Kansas ("Network Results"), by making unauthorized withdrawals from

Network Results' bank account. Following Network Results' discovery of the embezzlement on January 25, Mr. Kammerer and his wife, Elizabeth Kammerer, a co-defendant in this case, went to Legacy Bank on January 26 and obtained a loan in the amount of $200,000. According to the Government, the Kammerers made false statements in order to obtain the loan. The Kammerers deposited the loan proceeds in their joint checking account, and then, on the same day, wrote a $215,000 check to Network Result, apparently in an attempt to cover a portion of the amount embezzled.

On January 27, Mrs. Kammerer made out a cashier's check to Kathleen Hatfield, Mr. Kammerer's daughter, which she did not accept. On January 29 and 30, the Kammerers met with Mr. Carl Cornwell, and Mr. Kammerer decided to retain Mr. Cornwell as his attorney. A cashier check in the amount of $222,284.85 was drawn up by Mrs. Kammerer and made payable to Mr. Cornwell. Upon receipt of the check, Cornwell notified the United States Attorney and FBI that he had received a sizeable check from Mr. Kammerer, deposited the check in his trust account, and wrote a check for $26,667.67 to himself and one for $13,333.33 to Richard Hadel.[1] Over the next four months, Cornwell wrote checks from his trust account totaling $33,000 to Mr. Kammerer. According to Mr. Cornwell, he issued these checks so that Mr. Kammerer could repair his home and make it presentable for selling.

On November 9, 2010, the Grand Jury returned an indictment, charging Mr. Kammerer with illegally obtaining money from a financial institution, in violation 18 U.S.C. § 1344, with procuring a loan based on false statements, in violation of 18 U.S.C. §§ 2 and 1014, and engaging in a monetary transaction in property derived from specified unlawful activity, in violation of 18 U.S.C.

---

[1] The amount paid to Hadel was a referral fee.

§ 1957. The indictment also charged Ms. Kammerer with procuring a loan based on false statements, in violation of 18 U.S.C. §§ 2 and 1014, and engaging in a monetary transaction in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957. The first charge against Ms. Kammerer stemmed from his unauthorized withdrawals from his employer's bank account, while the remaining charges stemmed from the Kammerers' procurement of a loan from Legacy Bank, the deposit of the loans proceeds into Mr. Cornwell's trust account, and the distribution of those funds from that account to the Kammerers.

## II. ANALYSIS

The Government moves to disqualify Mr. Cornwell based on an actual or potential conflict of interest under Rule 3.7 of the Kansas Rules of Professional Conduct ("KRPC").[2] More specifically, the Government contends that Cornwell should be disqualified because he is a necessary witness with regard to at least two material factual issues: first, what was Mr. Cornwell's purpose for issuing checks from his trust account to Mr. Kammerer, and second, whether the Kammerers placed the loan monies in Mr. Cornwell's trust account because Mr. Cornwell told him that he would shelter the money for them.

The Sixth Amendment guarantees a criminal defendant a right to counsel. As noted by the Supreme Court, an element of this right "is the right of a defendant who does not require appointed counsel to choose who will represent him."[3] This right is not absolute, though. Rather, it must be weighed against the federal courts "independent interest in ensuring that criminal trials are

---

[2] The Government also contends that Mr. Cornwell should be disqualified because it is conceivable that he was a participant in the Kammerers' alleged money laundering scheme and that an attorney-client relationship may have existed between Ms. Kammerer and Mr. Cornwell. The Court finds these two theories to be fanciful at this point, and, thus finds that they cannot serve as a basis for disqualifying Mr. Cornwell from representing Mr. Kammerer.

[3] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006).

conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."[4] "When a district court finds that counsel has a conflict of interest, real or potential, it retains substantial latitude to disqualify counsel, even where a defendant consents to representation."[5] There is a "presumption in favor of petitioner's counsel of choice," but that presumption "may be overcome not only by a demonstration of actual conflict but by showing of a serious potential for conflict."[6]

Rule 3.7 provides that:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
    (1) the testimony relates to an uncontested issue;
    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on the client.

Here, the Court finds that there is a substantial likelihood that Cornwell will have to testify in this matter if it goes to trial, as Mr. Cornwell is the person who received the illegally obtained funds and is the one who disbursed them back to the Kammerers. Further, the Court finds that none of the exception listed under subpart (a) applies. As a consequence, the Court concludes that Mr. Cornwell will not be able to represent Mr. Kammerer if this matter goes to trial.

However, while Mr. Cornwell will not be able to represent Mr. Kammerer at trial, he will be able to represent him for pretrial matters. "In most jurisdictions, a lawyer who is likely to be a

---

[4] *United States v. Wheat*, 486 U.S. 153, 160 (1988).

[5] *United States v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990).

[6] *Wheat*, 486 U.S. at 164; *see also United States v. Evanson*, 584 F.3d 904, 909-10 (10th Cir. 2009).

necessary witness may still represent a client in the pretrial stage."[7] In this case, the Government has not identified a conflict sufficient to rebut the presumption that Mr. Kammerer should be able to have his pretrial matters handled by his attorney of choice. Therefore, Mr. Cornwell will be able to continue to represent Mr. Kammerer up until trial.

**IT IS THEREFORE ORDERED** that the Government's motion for recusal of counsel (Doc. 18) is hereby GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED**.

Dated this 15th day of February, 2011.

                                              ERIC F. MELGREN
                                              UNITED STATES DISTRICT JUDGE

---

[7]*Droste v. Julien*, 477 F.3d 1030, 1035 (quoting *DiMartino v. Eighth Jud. Dist. Ct.*, 66 P.3d 945, 946 (2003)).