IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                 Case No. 10-10174-01-EFM

JOHN KAMMERER,

    *Defendant*.

## MEMORANDUM AND ORDER

Defendants charged in federal court with a felony who cannot afford to obtain adequate legal representation on their own are entitled to have such representation furnished to them. Often, this is achieved through the services of the Federal Public Defender's Office, but frequently (generally due to conflicts in multi-defendant cases) attorneys are chosen from a panel of attorneys approved for furnishing such representation. Such appointments are essentially public service appointments, but appointed counsel are nonetheless entitled to be compensated for time "reasonably expended" in such representation.[1] Just what constitutes "reasonably expended" time is a matter the Court now considers in reviewing the CJA payment voucher presented by appointed counsel in this case.

Defendant John Kammerer was indicted by the Grand Jury on November 9, 2010. Three days later, privately retained counsel entered an appearance for him. The United States soon thereafter moved for recusal of counsel, and the Court entered an order on February 15, 2011 granting the motion in part. Ultimately, and pursuant to that order, retained counsel withdrew on

---

[1] 18 U.S.C. § 3006A(d)(1).

April 23, 2011, and on April 25, Randy Troutt was appointed by the Court to represent defendant. On September 26, 2011, Mr. Troutt's associate Gwynne Harris Birzer entered her appearance in this case, although she was never formally appointed as defendant's counsel by the Court.

After a couple of motions to continue and an informal status conference, defendant appeared before the Court on April 27, 2012 for a change of plea. That hearing was recessed due to problems with the documents, but defendant re-appeared on May 2, 2012 and entered a guilty plea. The Court entered an order granting an uncontested motion for forfeiture on May 18, 2012, and after at least one continuance, sentencing of the defendant was scheduled for August 6, 2012. In advance of sentencing, defendant filed a motion for downward departure, accompanied by a six page memorandum, as well as a two page motion to permit voluntary surrender. At sentencing, the Court heard and denied two objections to guideline enhancements, although it did grant defendant's unopposed request to remove a reference in the criminal history section that did not relate to defendant. The Court sentenced defendant to 51 months of incarceration, to be followed by five years of supervised release, and ordered restitution in the amount of $1,359,763.70. On October 8, 2012, the Court granted Mr. Troutt's and Ms. Birzer's motions to withdraw as counsel. Although subsequent docket entries reflect matters relating to forfeited funds, those counsel thereafter had no involvement in this case.

All of this is quite unremarkable procedurally, and virtually indistinguishable from probably hundreds of other criminal matters before this Court. What is most unusual, and prompted this Order, came shortly after counsels' withdrawal. They submitted vouchers reflecting that they had together billed 210.3 hours (206 hours for out of court time) on this matter, for a combined request for payment of attorneys' fees in an amount of $26,287.50.

Additionally, the vouchers requested reimbursement of $205.34 in travel expenses and $229.59 in other expenses.[2] A separate voucher seeking reimbursement of "other services" for 12.1 hours of paralegal time in the amount of $726.00 was submitted for the paralegal services of Velma Thompson, who is employed by the same firm with which Mr. Troutt and Ms. Birzer are associated.

Although each case is different, and comparisons between cases difficult, it is worth noting that the current maximum amount of attorney's compensation authorized is $9700 per non-capital felony case.[3] Requests in excess of that amount require certification by the presiding judicial officer that the case involved extended or complex representation for which additional fees are necessary to provide fair compensation, and approval of the same by the chief judge of the relevant circuit court of appeals.[4] A case is "extended" if more time is reasonably required for total processing than the average case.[5] A case is "complex" if the legal or factual issues are unusual, thus requiring the expenditure of more time, skill, and effort by the lawyer than would normally be required in an average case.[6] After determining that a case is extended or complex, the approving judicial officer must then determine whether excess payment is necessary to provide fair compensation by considering, among others, the following criteria: responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or

---

[2] The Court's administrative staff adjusted the travel expense request to $188.79 by disallowing meal expenses claimed in connection with day travel in the amount of $16.55; and adjusted the other expenses to $224.59 by disallowing $5.00 in long distance phone charges as an overhead expense.
[3] CJA Guidelines § 230.23.20
[4] CJA Guidelines § 230.23.10(c)
[5] CJA Guidelines § 230.23.40(b)
[6] *Id.*

other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee.[7]

The amount of maximum allowable compensation (absent approval of excess) applies to both cases which go to trial, and to those which do not. While it is not extraordinary to request such approval for excess fees, in this Court's experience it is by no means ordinary or typical, and usually arises in connection with a case that went to trial, or had extensive contested pretrial hearings, or that was designated a complex case (none of which apply here).

Initially, the Court finds it curious that the fees requested in connection with the counsel actually appointed to this defendant, Mr. Troutt, accounted for only five percent of the total attorney time billed.[8] It is not prohibited for an appointed counsel to seek assistance from another lawyer in his or her firm who was not formally appointed to represent the defendant, and the regulations allow the appointed counsel to be compensated for the time the other lawyer spent on the case, so long as such time is not duplicating time billed by the appointed counsel.[9] However, the expectation is that such other attorneys will merely assist the appointed counsel. The Court expects the counsel it has appointed to be the lead counsel for the case, and it goes without saying that such expectation was clearly not satisfied in this instance. Ultimately, however, this anomaly is not the primary matter troubling the Court in this case.

Several years ago, facing growing demand on the CJA panel created principally by the growth in multi-defendant criminal cases, the Court approached many of the prominent civil law firms in Wichita and requested their participation in the CJA panel. The Court was, and is, grateful for the response received from many firms, such as Mr. Troutt's, and the willingness of

---

[7] CJA Guidelines § 230.23.40(c)
[8] Mr. Troutt billed only 11.1 hours to this case; 10.7 for interviews and .4 for reviewing records. Although he appeared in court, he billed for no court time. 7.5 hours of his time was billed prior to Ms. Birzer entering her appearance in this case.
[9] CJA Guidelines § 230.53.10

4

attorneys in those firms (who would not have otherwise considered themselves engaged in criminal practice) to serve the public interest and the Court by volunteering to participate in the CJA panel. However, it is the Court's duty and obligation to fix the compensation to be paid the appointed attorney.[10] That duty includes determining what amount of time was reasonably expended.[11]

Appointed counsel are required, when claimed compensation exceeds the maximum amount allowed, to submit a detailed memorandum which supports and justifies that the additional time was made for extended or complex representation.[12] Counsel here submitted the required form. In describing discovery materials or practices which were a noteworthy factor in the number of hours claimed, counsel reported:

> Due to the nature of the charges, the sophistication level of our client, and the complex nature of the criminal conduct, discovery in this case involved substantial review of nine years worth of bank and various financial institution records totaling approximately 4,000 pages of documents in order to determine the amount embezzled, and what funds within those financial institutions were linked to the embezzlement.

In describing legal memorandum or research which were a noteworthy factor in the number of hours claimed, counsel reported:

> This case was disposed of via plea agreement. One other issue that affected this case was our client's position that he was acting on advice of counsel in his actions once the crime he committed was discovered. His retained attorney withdrew from representation upon order by the court due to the conflict issue of acting on advice of counsel. We, as his subsequent counsel, had to gather and review discovery the first attorney collected and compare it to discovery provided by the government. We needed to research the "advice of counsel" as well as prepare such a defense in the event we had to rely on it at trial. In addition, we assisted defendant in conveying property to Legacy Bank in order to mitigate restitution. This was done with the approval of the Assistant U.S. Attorney.

---

[10] 18 U.S.C. § 3006A(d)(5).
[11] *United States v. Hagan*, 2010 WL 1816338 (D. Kan. 2010).
[12] 18 U.S.C. § 3006A(d)(3); CJA Guidelines § 230.30. CJA regulations provide that the requesting attorney certify the same to the district judge, on a form provided, in accordance with paragraph 2.22B(3) of the *Guidelines For the Administration of the Criminal Justice Act*, Vol. VII, *Guide to Judiciary Policies and Procedures*.

In summarizing investigation and case preparation, including record collection and document organization, which were a noteworthy factor in the number of hours claimed, counsel reported:

> The bulk of our investigation consisted of review of a substantial number of documents and bank records in order to track the amount of money embezzled. In light of the amount alleged to have been embezzled, and how the amount relates to the sentencing guidelines, this task required organization and detailed tracking of funds. We also did some factual investigation by speaking with witnesses associated directly with the charged conduct (i.e., bank employees and defendant's former counsel).

On the form, counsel also indicated that "Communication with Client/Family" was a noteworthy factor in the number of hours claimed, explaining:

> There were several meetings with our client during each phase of the case, particularly in the discovery stage with regard to understanding the processes of the company, bank deposits, withdrawals, and use of the funds. Because of the client's experience with his previous counsel and the advice he claimed to have received, we engaged in extensive communication with our client as the case moved to the stage where it appeared that plea negotiations were necessary. We had extensive client meetings regarding plea offers and the impact of plea, including the actual plea hearing.

Finally, when asked to explain any other noteworthy circumstances regarding the case and the representation provided to support the compensation request, counsel reported:

> Overall, the complexity of this embezzlement case involved review and gaining a clear understanding of a substantial number of documents. It required investigation of embezzlement that occurred over a nine year period. The legal issues were not particularly complex with the exception of the advice of counsel issue that developed once the defendant's retained counsel withdrew from representation. In light of the defendant's relationship with his previous counsel, we had a heightened sense of duty to install trust with our client so we could properly represent him. This took time, it took transparency, it took meeting with our client more times and longer meetings than would normally be required had we been appointed to represent the client at the outset.

Counsel concluded this supplemental statement by noting:

> This was our first appointment on the CJ panel. The lead attorney (Randy Troutt) on the case has a primary practice of civil defense litigation. The attorney assisting with this case (Gwynne Birzer) does have some criminal defense

experience and has once served on the CJ Panel. Nevertheless, even though we worked as efficiently as possible, it still took time to explain the presentence report to our client and prepare objections thereto. This case was pending for approximately 18 months. We accepted representation in light of a heavy trial schedule. This was a most interesting matter and we do appreciate the appointment.

Ms. Birzer, who billed 95% of the attorney time submitted in this case, accordingly submitted bills for 72.2 hours for reviewing records, 57.3 hours for research and writing, 59.5 hours for investigation, and 5.9 hours for interviews, plus a total of 4.3 hours in court. The paralegal Ms. Thompson submitted bills for 3.4 hours for reviewing records and 8.7 hours for investigation.[13]

The Court has thoroughly reviewed counsels' submission, these governing authorities, and the proceedings in the case. Counsel admitted that this was their first CJA appointment. As noted, the Court deeply appreciates the involvement of the bar in rendering public service to the interests of justice by accepting appointments in these cases, but the compensation guidelines do not allow payment for excess time spent in learning the field. Counsels' submission also mentions multiple meetings with their client to gain his trust, and meetings with the client's family. Efforts by appointed counsel to gain the trust of a criminal defendant are by no means an unusual endeavor. Counsel also mentions the unusual situation arising from the defendant's prior counsel, and the Court is well aware of the highly questionable actions of that counsel in connection with this case. However, those actions all occurred after discovery of the conduct for which defendant was ultimately charged. Although reliance on that advice defeated the defendant's attempts to repay the embezzlement, the defendant's charges all related to the facts of the embezzlement itself. The defendant was not charged with anything in this case for which reliance upon prior counsel's advice would have been relevant.

---

[13] As noted earlier, Mr. Troutt billed 10.7 hours for interviews, and .4 hours for records.

Counsel noted the complexity of the embezzlement scheme with which the defendant was charged, and the substantial number of documents involved in the charged conduct. The Court agrees that the charged conduct was sophisticated and complex, and involved thousands of documents spanning several years. The embezzlement was initially suspected to exceed one million dollars. Ultimately a loss of 1.6 million dollars was claimed by the victim, although the loss verified by the U.S. Probation office was 1.2 million dollars. Since the guideline range established for sentencing was for a loss between $1,000,000 and $2,500,000[14] this difference did not impact the guideline sentence to which defendant was exposed, although of course it did impact the restitution he was ordered to make.[15] Counsel objected to the two point enhancement for sophisticated means, and to the two point enhancement for abuse of position. The Court overruled these objections, although it did order deletion of reference to a criminal charge in the PSI which did not relate to defendant (this did not affect the criminal history calculation). As noted earlier, a six page memorandum in support of motion for downward departure and a two page motion for stay of execution and voluntary surrender were also filed.

The Court cannot approve the total number of hours billed by counsel in this case. Given that counsel has admitted that the case was not legally complex other than with regard to the "advice of counsel" matter, which the Court has already determined to be irrelevant to this defendant's charges, the Court reduces the 57.3 hours of legal research billed to 20 hours. While recognizing the factual complexity of this matter, the Court cannot approve the number of hours billed for records and investigation by counsel. The Court reduces the 72.6 hours[16] for reviewing records to 40 hours, and the 59.5 hours for investigation to 25 hours. The Court approves the 4.3

---

[14] *United States Sentencing Guidelines* § 2B1.1(b)(1)(I)
[15] Defendant was ordered to pay restitution in the amount of $1,359,763.70, which included the loss from embezzlement of $1,215,540 plus other bank and insurance company losses.
[16] Including .4 from Mr. Troutt.

hours billed for In Court time, approves the 16.6 hours billed for Interviews and Conferences[17] for a total of 105.9 hours.[18] The Court also approves the travel and other expense as adjusted by the Court's administrative staff, and approves the "other services" voucher submitted for the paralegal time.[19]

When a reviewing judge fixes compensation to an appointed attorney at an amount which would reduce the claim submitted by that attorney, the regulations provide that the appointed attorney shall be provided advance notice of the proposed reduction by the Court with a brief statement of the reasons for the reduction, and shall be provided with an opportunity to address the matter.[20] Accordingly, the Court grants counsel 14 days from the date of this Order to file a written response. Further, if counsel requests an opportunity to be heard orally in addition to the written response, counsel should so indicate in the response and the Court will schedule a hearing date promptly.

IT IS SO ORDERED.

Dated this 7th day of February, 2013.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[17] 10.7 hours billed by Mr. Troutt and 5.9 hours billed by Ms. Birzer.
[18] This amount is in excess of the maximum allowable, and will require certification by this Court and submission for approval by the Chief Judge of the Circuit Court. This Court is prepared to certify that the excess amount is necessary because the case was "extended."
[19] It seems to the Court that much of the records review and organization should have more properly been done by a paralegal than by an attorney; and in adjusting the time for records the Court considered what time a paralegal with a lower-billing rate would have spent, and made its adjustments accordingly.
[20] CJA Guidelines § 230.36